UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Bryan Bernard
Joan Voutour

   v.                                    Civil No. 08-cv-183-JD

Town of Tilton, et al.[1]

**REPORT AND RECOMMENDATION**

Before the Court is the complaint (document nos. 1 & 4)[2] of Bryan Bernard and Joan Voutour, alleging that defendants have violated a number of their rights by denying plaintiffs town welfare benefits. Because the plaintiffs are proceeding pro se and in forma pauperis, the matter is before me for preliminary review to determine, among other things, whether the complaint states any claim upon which relief might be granted. See United States District Court District of New Hampshire Local Rule ("LR")

---

[1] In addition to the Town of Tilton, plaintiffs have named the Tilton Welfare Department, and its Director, Heather D. Thibodeau, as defendants to this action.

[2] After filing the initial complaint in this matter (document no. 1), plaintiffs filed additional addenda and exhibits to the action (document no. 4). I will accept both of these pleadings, in the aggregate, as the complaint in this matter for all purposes.

4.3(d)(1)(B). As explained herein, I recommend that this action be dismissed in its entirety.

## Standard of Review

Under this Court's local rules, when a plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review. LR 4.3(d)(1)(B). In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings generously in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true. See id.

This review ensures that pro se pleadings are given fair and meaningful consideration.

## Background

Plaintiffs are disabled individuals living in the town of Tilton, New Hampshire ("Town"). Plaintiffs applied for, and were denied, financial assistance from the Town in the form of fuel assistance, electricity assistance, and housing assistance. Plaintiffs claim that the denial of benefits was based on bias because plaintiff Voutour is a prior addict, and plaintiff Bernard is a former state prison inmate.

The facts provided in support of plaintiffs' claims are sketchy and incomplete, at best. Liberally construing the complaint, as I must, however, I find that the following facts have been asserted by plaintiffs:

- On November 1, 2007, Bernard received a letter from the New Hampshire Department of Health and Human Services ("NH-HHS") advising him that any inquiry for state benefit eligibility upon his release from incarceration should be directed to the Department's Manchester District Office.

- On November 25, 2007, Voutour was notified by the Social Security Administration that her Supplemental Security Income

payment would be raised to $637.00 per month as of January 1, 2008.

- On February 29, 2008, Voutour was issued a First Notice from the Town, advising her that her application for general assistance might be denied because she had failed to apply for other public benefits, had failed to provide financial data, and because certain state benefits she might have been eligible for or receiving precluded her from receiving Town assistance.  She was told to provide proof that she had applied for state benefits, social security benefits, Section 8 public housing assistance at the Federal Housing Authority, and assistance from Community Action Assistance.  She was also told to show her paid bills to demonstrate income and expenses for the previous and next four weeks, medical documentation of her stated physical condition, a "landlord form," and demonstration that she had spent her income on basic needs first.  In addition, Voutour was advised that her application for general assistance from the Town would be denied both because her income exceeded her basic needs, and because she was receiving state benefits that precluded her from receiving Town benefits.

- On March 18, 2008,[3] Voutour was referred by the NH-HHS to the Salvation Army for assistance. That letter also advised Voutour that she was potentially eligible for food stamps, as well as cash and medical assistance, through the state.

- On March 27, 2008, Bernard was issued a First Notice from the Town, advising him that his application for general assistance might be denied because he had failed to apply for other pubic benefits, failed to provide financial data, and failed to provide "accurate verifiable information and documentation." He was told to provide the notice of decision for his state food stamp application, submit proof of status of his social security benefits, demonstrate that he had applied for fuel assistance from Community Action Assistance, documentation of his income and expenses for the previous and next four weeks, and to provide medical documentation of his stated physical condition. On that date, Bernard was also advised that he had been granted $200 in rental assistance as well as some form of prescription drug assistance.

- On March 31, 2008, Bernard applied to the state for "Walking Disability Privileges" due to permanent and chronic neck

---

[3]The letter is actually dated March 18, 2009. I presume that is a typographical error.

and back pain.  The information on the application was supplemented with medical records and signed by a physician.

- On April 26, 2008, both Voutour and Bernard, who reside at the same address, received letters from defendant Thibodeau that were intended for the other.  Apparently, the letter written to Voutour was placed in an envelope addressed to Bernard, and vice versa.  The letter intended for Voutour provided general information about welfare benefits and did not discuss specifics of her welfare application or case.  The letter intended for Bernard did contain specific information regarding Bernard's disability claim, and requested that Bernard sign up for an additional appointment in order to further his application for Town welfare benefits.  The letter also referred to repeated telephone calls from Bernard to the Tilton Welfare Department, despite the fact that Bernard had no legitimate business with that office, because he had not yet followed the application process of making a personal appointment.  The letter advised Bernard that further telephone contact without such an appointment would be considered harassment and would be reported to the police.  Bernard's notations on the exhibit submitted indicate that one of the calls he had placed to the Town was for

the purpose of advising Thibodeau of his opinion that she had broken the law, and that the plaintiffs intended to file complaints against her in the United States District Court.

The complaint generally asserts that Voutour was denied all benefits, and Bernard, despite being notified that he had been granted a cash benefit of $200 and prescription assistance, did not actually receive any benefits. The plaintiffs claim that the denial of their benefits was the result of bias against them due to their histories of drug addiction and incarceration. Bernard also appears to assert that his status as an ex-offender entitles him, as a member of a "disadvantaged minority," to social security, disability, and other governmental benefits.

Discussion

I.   Jurisdiction

Federal courts are courts of limited jurisdiction. Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, 552 (2005) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). The presumption is that a federal court lacks jurisdiction. Kokkonen, 511 U.S. at 377. Consequently, the burden is on the plaintiff who claims jurisdiction to affirmatively allege and prove jurisdiction. Id. To bring a

civil action within the court's subject matter jurisdiction, a plaintiff must allege that his action involves either a federal question or diversity jurisdiction. See 28 U.S.C. §§ 1331 & 1332. Here, there is no diversity of the parties, who are all located in New Hampshire. Accordingly, this Court's jurisdiction depends on the existence of a federal question. Id.

II. Asserted Federal Claims

The complaint lists several federal statutes that plaintiffs contend provide them with rights that were violated by defendants' acts. Plaintiffs assert, under 42 U.S.C. § 1983, Eighth and Fourteenth Amendment claims, claims under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), and the Developmental Disabilities Assistance Act, 42 U.S.C. § 15001, et seq. ("DDAA"). Plaintiffs also assert generally that the Town welfare department has additional unspecified "legal obligations" to provide plaintiffs with assistance.

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law. See 42 U.S.C. § 1983[4]; Parratt v. Taylor, 451

---

[4] 42 U.S.C. § 1983 provides that:

U.S. 527, 535 (1981) (<u>overruled on other grounds by</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 330-331 (1986)); <u>Wilson v. Town of Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002). In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation. <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v. Flores</u>, 103 F.3d 1056, 1061-62 (1st Cir. 1997). Because all of plaintiffs' claims allege violations of rights purportedly secured by federal statutes and the federal constitution, all of the claims alleged arise under § 1983.

    A.   <u>Claims Based on Constitutional Violations</u>

Plaintiffs allege that defendants violated their Eighth and Fourteenth Amendment rights. The Eighth Amendment protects those convicted of crimes from cruel and unusual punishment. Here, where there is no allegation that any of the defendants' acts are punishments for crimes, the reliance on the Eighth Amendment for

---

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

9

protection is misplaced.  See Ingraham v. Wright, 430 U.S. 651, 669 (1977) (holding that the Eighth Amendment's prohibition of cruel and unusual punishment applies only to punishments imposed after criminal convictions).  I therefore recommend dismissal of plaintiffs' Eighth Amendment claims.

Invoking the federal constitution, plaintiffs have alleged that they have been discriminated against on the basis of their disabilities.  No facts alleged in the complaint support these assertions.  Plaintiffs assert that Thibodeau denied them benefits because she was biased against them due to their addiction history, criminal history and disabilities.  The exhibits submitted by plaintiffs, however, belie these accusations.  The exhibits demonstrate that Thibodeau was attempting to assist them in obtaining the benefits to which they were entitled, and to the extent benefits were denied, nothing in the documents submitted, aside from plaintiffs' conclusory statements, indicates that Thibodeau's decisions were based on any untoward or improper, much less unconstitutional, motivation.  I find that plaintiffs have failed to state any viable claim for a constitutional violation based on discrimination, and I recommend that any such claims be dismissed from this action.

Bernard also claims that Thibodeau retaliated against him by threatening him with criminal prosecution for exercising his First Amendment rights by expressing his intent to sue her in federal court.  It is well-settled that "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (citing authority); see also Oropallo v. Parrish, No. 93-1953, 1994 WL 168519, at *4 (1st Cir. May 5, 1994) (explaining how conduct done in retaliation for exercising First Amendment rights is actionable under § 1983).  To state a retaliation claim, plaintiff must show "(1) constitutionally protected conduct, (2) an adverse action by [government] officials 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,' and (3) 'a causal link between the exercise of his constitutional rights and the adverse action taken against him.'"  Mitchell, 318 F.3d at 530 (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (internal quote omitted)).  In considering the facts alleged, including those revealed by exhibits appended to the complaint, I cannot find

that Bernard has provided any factual support for his assertion of retaliation.  Thibodeau told Bernard to make an appointment to further his application for Town benefits.  Bernard failed to do that.  Bernard, instead, called Thibodeau at least four times.  During one of those calls, Bernard told Thibodeau that he believed she was violating the law and that he intended to sue her in federal court.  By letter, Thibodeau simply advised Bernard that prior to making an appointment, he had no legitimate business with that office.  She further stated that should he continue to call, after being told not to do so and without legitimate business with the office, that she would consider the phone calls to be harassing and would contact the police.  Considering not only what Thibodeau wrote, but the manner in which the letter was written to Bernard, I cannot find that Thibodeau's conduct threatened criminal prosecution in retaliation for Bernard's stated intention to sue.  Even assuming that Bernard has a right to sue, and that Thibodeau took adverse action against him, Bernard has failed to demonstrate any causal link between Thibodeau's actions and any intent on her part to chill or deter Bernard from filing a legitimate lawsuit.  Accordingly, I recommend dismissal of the retaliation claim.

B.    Claims Based on Statutory Rights

Plaintiffs assert that the denial of Town benefits by defendants abridged their rights under the ADA and DDAA. With respect to the DDAA claims, there is no direct allegation, nor are there any facts alleged from which I can infer, that either plaintiff in this matter is developmentally disabled. See 42 U.S.C. § 15009(a).[5]  Accordingly, I recommend dismissal of any claims raised under the DDAA, which creates rights for people with developmental disabilities.  See 42 U.S.C. § 15009(b).

The plaintiffs also assert claims under the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

> Pursuant to the plain language of Title II, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such

---

[5] 42 U.S.C. § 15009(a) provides in relevant part: "Individuals with developmental disabilities have a right to appropriate treatment, services, and habilitation for such disabilities, . . ."

>exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000). Here, plaintiffs have alleged, which I accept as true for purposes of preliminary review, that they have disabilities that qualify them for the protection of the ADA. Plaintiffs further assert that they have been denied the benefits of a public program, in that they have been denied Town welfare benefits. However, plaintiffs have not alleged any facts, other than conclusory statements, which allow me to infer that the denial of benefits "was by reason of the plaintiff[s'] disability." To the contrary, Voutour has herself submitted documentation evidencing that the denial of Town benefits to her was the result of her objective ineligibility for those benefits, as she was either receiving or entitled to receive state benefits that precluded her from receiving Town benefits under New Hampshire law. See N.H. Rev. Stat. Ann. § 167:27 (prohibiting persons receiving "aid to the permanent and totally disabled" benefits from the state from receiving most other welfare benefits from the state or any town). Bernard has submitted documentation that he was, in fact, granted benefits. Although Bernard claims he did not receive the benefits granted, he does not allege any facts which support the

14

inference that such a denial was discriminatory or based in any way upon his disability. Accordingly, I recommend that the claims alleged under the ADA be dismissed.

III. State Claims

The provision of town benefits in New Hampshire is a matter governed by state law, which "requires each city and town to help persons who are unable to support themselves." N.H. Rev. Stat. Ann. § 165:1[6]; Baker v. City of Concord, 916 F.2d 744, 746 (1st Cir. 1990) (discussing the operation of town welfare programs in New Hampshire). Accordingly, whether or not a town has met its obligation to support its needy inhabitants is a question of state law.

Where, as here, there is no diversity of the parties, this Court can obtain jurisdiction over plaintiffs' state law claims only by exercising its supplemental or pendant jurisdiction over that state claim where the claim is part of the same case or controversy as a federal question claim properly before this Court. See 28 U.S.C. § 1367(a) (allowing court to exercise

---

[6]N.H. Rev. Stat. Ann. § 165:1 provides in relevant part:

> Whenever a person in any town is poor and unable to support himself, he shall be relieved and maintained by the overseers of public welfare of such town, whether or not he has residence there.

supplemental jurisdiction over state law claims that are "so related to the claims in the action within the original jurisdiction that they form part of the same case or controversy); see also United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Plaintiffs' state law claim arises out of the same facts and circumstances as their asserted federal claims; however, because I have recommended dismissal of the federal claims, I recommend that this Court decline to exercise its pendant jurisdiction over the state law claim, and further recommend that it also be dismissed.

## Conclusion

As I find that plaintiffs have failed to state any claim upon which relief might be granted, I recommend dismissal of this action in its entirety.  Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6

16

(1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:      October 16, 2008

cc:        Bryan Bernard, pro se
           Joan Voutour, pro se